**Ella M. Bartholf, Administratrix, Appellee, v. Wabash, Chester & Western Railroad Company, Appellant.**

NEGLIGENCE—*when special care should be exercised at railroad crossings.* Especial care should be taken by a railroad company where its right of way is grown up with weeds, etc., and is so situated with respect to an embankment that a train approaching was almost wholly hidden from one traveling upon the highway which intersected the tracks.

Action in case for death caused by alleged wrongful act. Appeal from the Circuit Court of Jefferson county; the Hon. WILLIAM H. GREEN, Judge, presiding. Heard in this court at the March term, 1911. Affirmed. Opinion filed November 11, 1911.

R. M. FARTHING and H. CLAY HORNER, for appellant.

G. GALE GILBERT, for appellee.

MR. JUSTICE HIGBEE delivered the opinion of the court.

This was a suit brought by the administratrix of the estate of Andrew Bartholf, deceased, who was killed at a public crossing on appellant's track in Jefferson county, Illinois.

The declaration charged failure on the part of appellant to blow the whistle or ring the bell on the engine approaching said crossing; negligence and carelessness on the part of appellant's servants in driving its engine and failure on their part to look forward to see if any one was upon the track at said crossing and failure to keep the right of way free from weeds, briars, brush and trees at and near the said crossing. There was a verdict followed by a judgment in favor of appellee for $840.

On this appeal appellee asks that the judgment of the court below be affirmed and appellant also asks for an affirmance of the judgment unless this court should be of the opinion the judgment should be reversed without remanding the case for a new trial.

The record discloses the following facts bearing upon the case: Near the town of Marco, appellant's road runs in a northeasterly and southwesterly direction and is crossed by a public highway running east and west at an angle of about thirty degrees. Some forty rods west of the crossing on the south side of the highway are a church and a cemetery. A train approaching from the northeast, is concealed from view of any one traveling along the highway east of the crossing by a heavy growth of timber, until within a quarter of a mile of the crossing. From the church a train could be seen across an open field as it emerged from behind the timber, but as it approached near the crossing, for some distance only the top of the engine and cars could be seen. When within 75 to 100 feet of the crossing, the train was entirely hidden by an embankment and tall weeds on the right of way from one passing along the highway. There were also other points between the timber and the crossing where weeds, saplings, and brush had been permitted to grow and remain along the right of way, which in some degree interfered with the view of the train from the highway. In the forenoon, on August 6, 1910, Andrew

Bartholf, a man 66 years of age, in good health and well acquainted with the surroundings, was driving west along the highway towards the crossing, going to Marco. He had a pair of ponies hitched to an open canopy top surrey, on the back seat of which was William Phelps, a young man 22 years of age in his employ. About this time appellant's passenger train, consisting of a coach, baggage car, two coal cars and an engine came from the northeast towards the crossing. The team was going at the rate of about four miles an hour, and the train at the rate of from eighteen to twenty-two miles an hour. The section boss and four men were working at or near the crossing. One of the men, Oscar Pigg, was cleaning off the track at the crossing as the team and engine approached. He testified that when the team was 100 feet away he motioned to Bartholf to stop and cried out to him and that he kept motioning to him until the team came right up to him in a gallop, when he had to step aside to save himself; that the team went on the track and a collision occurred which caused the death of Bartholf and injured Phelps. The testimony of Pigg is corroborated by the section boss and two of the section men. Phelps, who was in the surrey with Bartholf, testified they were going in a trot and did not notice the train coming; that when they were a short distance from the track he noticed the witness Pigg cleaning off the rails of the track and just as the ponies were ready to step on the track Pigg threw up his hand, Bartholf grabbed his whip and the ponies made a lunge bringing them to the center of the track where the engine struck them.

Appellant introduced several witnesses who testified that Phelps told them soon after the accident, that he tried to get deceased to stop but he could not do so. Phelps admitted conversing with said persons and did not deny their statements but said it was shortly after the accident and he had been injured and was frightened and suffering pain.

484    APPELLATE COURTS OF ILLINOIS.

Bartholf v. Wabash, Chester & Western R. R. Co., 165 Ill. App. 481.

It was contended on the part of appellant that Bartholf was guilty of negligence contributing to bring about the collision which caused his death, for the reason that he saw the train for some distance before he reached the crossing and forced his team into a run in an endeavor to pass over the crossing before the train reached him; that he was warned by Pigg by his motions and voice, not to come upon the crossing, but ignored the warnings.

On the other hand it is contended by appellee and testified to by Phelps that Bartholf was a sober, industrious man of mature years; that he was driving along the highway in a trot and never at any time increased that gait; that neither he nor Phelps saw or heard the train until the ponies were going upon the track; that the motions made by Pigg were as well calculated to lead Bartholf and Phelps to believe he was urging them to pass over the crossing before the train reached it, as to warn them of danger and that they did not hear the warning called out to them by him.

In support of the claim of appellee that Bartholf and Phelps did not see or hear the train, we must also take into consideration the fact that a preponderance of the evidence, shows that the whistle upon the engine was not sounded nor the bell rung, as required by law in approaching the crossing. Upon the whole evidence, the question appears to us to have been a close one as to whether Bartholf was or was not guilty of contributory negligence in approaching and attempting to pass over the crossing at the time he received the injuries which caused his death.

The next question is whether or not appellant was guilty of negligence in approaching the crossing. As above stated a preponderance of the evidence showed that the statutory signals were not given by appellant's engineer and fireman in approaching the crossing. The right of way was grown up in places with saplings, brush and weeds and there was not far from the crossing, an embankment which entirely hid the train from

view on the highway. Ordinary care would require that in a location of such surroundings the warning signals should be given even if the statute did not require them. Certain it is that in the absence of such signals, common caution would require that the engineer or fireman or both of them, should have kept a sharp lookout for danger at the crossing, which does not appear from the evidence to have been done.

The proofs would seem to sustain the charge that appellant was guilty of negligence at the time and before the collision with Bartholf's vehicle.

We conclude, therefore, that the case was one properly calling for the verdict of a jury. No question is raised by appellant, except those growing out of the facts and therefore for the reasons above given the judgment of the court below will be affirmed.

*Judgment affirmed.*